FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ROBERT D. LEAHY<br>8372 Dario Way<br>Fort Myers, FL 33912<br><br>Plaintiff,<br><br>v.<br><br>COMPUTER SCIENCES CORP. aka CSC<br>3170 Fairview Park Drive<br>Falls Church, VA 22042<br><br>SERVE:<br>    REGISTERED AGENT:<br>    CT Corporation System<br>    4701 Cox Road, Suite 285<br>    Glen Allen, VA ZIP: 23060-0000<br><br>Defendant. | 2014 JUN -4 P 3: 11<br><br>CLERK US DISTRICT COURT<br>ALEXANDRIA. VIRGINIA<br><br>Civil Action No. 1:14CV665-JCC-TRJ |

## COMPLAINT FOR RELIEF FROM
## AGE DISCRIMINATION IN EMPLOYMENT

### Introduction and Summary

1.    The two most powerful people running Computer Science Corporation aka CSC ("CSC") held a meeting where they excoriated a senior executive for hiring "old farts." A short time later, CSC fired both the senior executive and the 61-year old employee whose hiring had prompted the "old fart" comment. That 61-year old employee, who was fired two weeks before his 62nd birthday, is the plaintiff in this case. This biased comment was not an isolated incident. These two powerful executives are Mike Lawrie, CEO, and his deputy, Vice President and Chief of Staff Jo Mason. Ms. Mason made the offensive comment in Mike Lawrie's presence, and she often speaks for Mr. Lawrie as his alter ego or deputy. Mr. Lawrie and Ms. Mason operate as a

team and frequently travel together. Because of this close relationship, employees have reason to believe that Ms. Mason's statements and directions should be treated as if they came from Mr. Lawrie. This lawsuit seeks relief for unlawful age discrimination and loss of contract benefits. All allegations are on information and belief.

## Jurisdiction and Venue

2. This is an action brought under The Age Discrimination in Employment Act, 29 U.S.C. § 621, et. seq., seeking back pay, re-instatement and other relief for discrimination in employment based on age. This Court has jurisdiction under 29 U.S.C. § 626(c) and 28 U.S.C. §§ 1331, 1343. Venue lies in this Court as CSC's headquarters is in this judicial district, plaintiff was employed in this judicial district, and the discriminatory employment practices challenged in this action took place in Falls Church, Virginia. 28 U.S.C. § 1391.

## Parties

3. Plaintiff Robert Leahy is a 62-year old man who was employed at CSC's headquarters in Falls Church, Virginia. During the relevant times, Mr. Leahy was a resident of Virginia. During the relevant times, Mr. Leahy performed most or all of his work within the Eastern District of Virginia. Mr. Leahy was an "employee" of CSC as that term is used in the ADEA. At the time of his firing, Mr. Leahy was in the age group protected by the ADEA.

4. Defendant CSC is a company licensed to do business in the state of Virginia. CSC is involved in the field of computer consulting and IT services, among others. CSC is an "employer" as that term is used in the ADEA. CSC has its headquarters in the state of Virginia, and within the Eastern District of Virginia. CSC has more than 500 employees. This court has personal jurisdiction of CSC.

## Facts

5. This lawsuit challenges CSC's firing of the plaintiff.

6. During the relevant time, Jim Finn was the Vice President, Corporate Communications. Mr. Finn determined that he needed a very experienced person who could perform independently with minimal training or supervision. Based on these and other criteria, Mr. Finn hired plaintiff, Robert Leahy. Mr. Leahy had decades of relevant experience and had worked with some of the most recognized names in the field. Mr. Finn, in consultation with Human Resources and other managers, determined that Mr. Leahy had the best qualifications of the candidates.

7. Mr. Leahy was hired as the Senior Principal--Financial and Strategic Communications. His title later changed to Director--Financial and Strategic Communications, representing increased supervisory responsibilities.

8. After being hired by CSC, Mr. Leahy was required to relocate to Virginia on short notice. At some inconvenience, Mr. Leahy changed his residence to Virginia.

9. Mr. Leahy performed well as an employee of CSC. Mr. Finn, Leahy's immediate supervisor, provided positive feedback and was overall very pleased with Mr. Leahy's performance. Because of Mr. Leahy's extensive experience, he was able to perform his job with minimal training and supervision.

10. Mike Lawrie is the CEO for CSC. Jo Mason is Mr. Lawrie's deputy and confidante. Ms. Mason's title is Chief of Staff. Ms. Mason travels frequently with Mr. Lawrie. Ms. Mason often speaks for Mr. Lawrie. Ms. Mason has both actual and apparent authority to speak for Mr. Lawrie. Ms. Mason has both actual and apparent authority to make personnel decisions for CSC.

11. On or about January 22, 2014, there was a meeting which included Mr. Finn, Mike Lawrie, Jo Mason, and Executive Vice President of Human Resources Sunita Holzer. Jo Mason criticized Mr. Finn for his hiring decision relating to plaintiff (and possibly others). Ms. Mason said to Mr. Finn that he was "hiring 'old farts' which is not what we need," or words to that effect. Ms. Mason said this comment in front of Mr. Lawrie, in the context of discussing Mr. Finn's subordinates and personnel decisions. In such contexts, Ms. Mason often spoke for Mr. Lawrie. Mr. Lawrie was present for Ms. Mason's "old farts" comment and he did not express any disagreement with that comment. By his conduct, he indicated his agreement with Ms. Mason's statements. Ms. Mason serves as the chief of staff and is likely the second most powerful official in the company in her own right. Whether or not Ms. Mason was speaking for Mr. Lawrie, she was one of the top officials of CSC at the time. Ms. Mason's statement was the statement of senior management whether or not Mr. Lawrie adopted it.

12. On or about January 29, 2014, Ms. Mason spoke with Mr. Finn regarding Mr. Leahy. Ms. Mason mentioned Mr. Leahy by name. Ms. Mason criticized Mr. Leahy's age, saying to Mr. Finn something to the effect of "you need to hire people on the way up, not on the way down." The tone and context of Ms. Mason's comment established that she was critical of Mr. Finn's decision to hire Mr. Leahy because of his age. Mr. Finn understood this to mean that a man in his 60's like Mr. Leahy must be "on his way down" in Ms. Mason's view. Ms. Mason also made comments to the effect that she wanted CSC to look more like "Google," which is known to be a company full of young people.

13. On February 4, 2014, Ms. Holzer told Mr. Leahy that he had been fired by CSC. Ms. Holzer gave Mr. Leahy no specific details about CSC's reasons supporting its decision. CSC did not provide Mr. Leahy any opportunity to respond or to show improvement regarding any

4

alleged concerns. Mr. Leahy's termination letter dated February 4, 2014, states that "CSC is exercising its at-will employment option" and that his termination is effective the same date as the letter, February 4. The termination letter also stated "Your health and welfare benefits will cease at midnight of the separation date." Mr. Leahy had never been asked about any specific incidents, so the company never made any effort to investigate or determine the truth of any supposed concerns or allegations.

14. Mr. Leahy was not offered severance. Mr. Leahy was not offered a pro-rated bonus. CSC offered other terminated employees severance, pro-rated bonuses, or both. Most or all of these terminated employees were younger than plaintiff. Mr. Leahy lost stock options and RSUs (Restricted Stock Units) as a result of his unlawful termination. Mr. Leahy's employment was terminated on the spot, with no opportunity to announce his departure or say goodbye to colleagues. CSC did not offer any financial assistance to Mr. Leahy to move back to where had been living when hired. Instead, Mr. Leahy had to break his lease and move his own belongings.

15. Plaintiff timely filed a charge with the EEOC. At least 60 days have elapsed since the date of Mr. Leahy's EEOC charge filing. All prerequisites to this suit have been satisfied.

## COUNT ONE
## AGE DISCRIMINATION

16. All previous allegations are incorporated.

17. CSC fired plaintiff because of his age. CSC's actions violated the Age Discrimination in Employment Act. CSC acted knowingly, wantonly, willfully and/or in reckless disregard of plaintiff's rights.

## COUNT TWO
## BREACH OF CONTRACT

18. When Leahy was hired, CSC awarded him a grant of 1,097 options to buy CSC stock at a favorable price. The stock was provided in connection with his hiring and was part of his compensation package. CSC also awarded Leahy 527 Service-vesting RSUs (Restricted Stock Units).

19. The grant of stock options received by Leahy were made under the terms of a formal Plan adopted by CSC. The grant of RSUs received by Leahy were made under the terms of a formal Plan adopted by CSC.

20. Leahy's stock options were granted pursuant to a Stock Option Agreement, which is a valid contract between CSC and Leahy ("the Agreement"). The RSUs are also controlled by an Agreement. CSC provided the stock options and/or RSUs to Leahy as an important part of his compensation package and as an incentive for Leahy to stay on as an CSC employee. In return, CSC received the continued employment of Leahy.

21. The terms of the parties' options Agreement permitted Leahy to purchase CSC stock at a favorable price. In addition, the Agreement provided that Leahy's grants of stock options were subject to a vesting schedule that matured over the course of three years. Since the time CSC provided Leahy stock options, their value has increased. These options represent a substantial benefit to Leahy.

22. CSC and Leahy were party to an Agreement regarding options to purchase CSC stock, which constituted a valid contract. The terms of this Agreement entitled Plaintiff to exercise options to buy CSC stock at a favorable price.

23. CSC had a duty to fulfill the terms of the parties' Agreement in good faith and a duty to deal with Plaintiff fairly in connection with his contract rights.

6

24. CSC's conduct toward Leahy was arbitrary, mean-spirited, willful, wanton, reckless, and exhibited disregard for the rights of Plaintiff.

25. CSC, by and through its wrongful and unlawful conduct, breached the parties' Agreements and wrongfully prevented Leahy from enjoying the full benefit of his bargin. CSC wrongfully prevented Leahy from exercising all options and/or RSUs to which he was entitled under the Agreement.

26. As a direct, proximate, and foreseeable result of CSC's breach, Leahy has suffered damages, including the loss of his options to purchase CSC stock and/or the value of his RSUs.

WHEREFORE, plaintiff requests that this Court:

1) declare that CSC violated his rights under the ADEA;

2) award plaintiff back pay and all compensation, benefits and emoluments of his position, including but not limited to any bonuses, stock options, pensions or anything of value that he would have received but for CSC's unlawful conduct;

3) make plaintiff whole in all respects to the maximum extent possible, including but not limited to reinstatement, correcting records and awarding or reinstating anything of value, whether tangible or intangible, that plaintiff was entitled to but for CSC's unlawful conduct;

4) award compensatory, liquidated, exemplary and/or punitive damages as appropriate;

5) As to Count II, award plaintiff each and every stock option, RSU and other benefit provided by the Agreements, or the full value thereof, whether said options or RSUs would have vested in the past or in the future, and other damages;

6) award costs and reasonable attorneys' fees incurred in this action and the administrative claims that necessarily preceded it; and

7) such other relief as the Court deems just or proper or as is available under the law.

### Jury Demand

Plaintiff requests a trial by jury.

_____
Stephen Z. Chertkof (34243)
HELLER, HURON, CHERTKOF & SALZMAN
1730 M Street, NW; Suite 412
Washington, DC 20036
(202) 293-8090
Fax: (202) 293-7110
szc@hellerhuron.com

Counsel for Plaintiff