IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| ROBERT LEAHY, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:14cv665(JCC/TRJ) |
| ) | |
| COMPUTER SCIENCES CORP., ) | |
| ) | |
| ) | |
| Defendant. ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Robert Leahy's ("Plaintiff") Motion in Limine. [Dkt. 40.] For the following reasons, the Court will grant in part and deny in part the motion and will defer ruling on certain testimony until trial.

**I. Background**

Familiarity with the facts is presumed. (*See* 2/12/15 Mem. Op. [Dkt. 54].) Briefly, Plaintiff is a former employee of Computer Science Corp. ("CSC" or "Defendant"). He alleges that Defendant impermissibly terminated him because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"). (Compl. [Dkt. 1].) Defendant claims Plaintiff was fired for violating CSC's values, referred to by the acronym "CLEAR." A three-day jury trial is set to begin on March 3, 2015. [Dkt. 26.]

1

In this motion, Plaintiff seeks to exclude the following evidence at trial: evidence that Plaintiff claims was unknown to Mike Lawrie ("Lawrie"), CSC's CEO, Jo Mason ("Mason"), Lawrie's chief of staff, and Sunita Holzer ("Holzer"), CSC's former vice president of human resources, on January 28, 2014, the date the decision was made to terminate Plaintiff; impermissible character evidence about Plaintiff; evidence Plaintiff contends concerns only Jim Finn ("Finn"), Plaintiff's direct supervisor at CSC; and testimony from Marion McGill ("McGill"). (*See* Pl.'s Mot. in Limine [Dkt. 40].) Having been fully briefed and argued, this motion is ripe for disposition.

## II. Analysis

**A. Evidence Alleged to be Unknown to Decision-Makers at time of Firing**

Plaintiff argues the Court should exclude certain of Defendant's trial exhibits and witnesses because they pertain to information that he alleges was not known to decision-makers on January 28, 2014, the date they decided to terminate him. Defendant challenges Plaintiff's legal and factual support for this statement. At the outset, the Court notes that both practically and legally speaking, Defendant could not have terminated Plaintiff on the basis of information unknown to it. Defendant seeks to apply *McKennon v. Nashville Banner Publishing*

2

*Co.*, 513 U.S. 352 (1995) here, arguing that *McKennon* held that evidence of an employee's wrongdoing, regardless of when decision-makers learned of it, was relevant to limiting damages. (Def.'s Opp. at 2 (citing *McKennon*, 513 U.S. at 361-62).) However, *McKennon* did not just concern calculating damages. The district court and the Sixth Circuit held that the plaintiff was not entitled to relief under the ADEA because after-acquired evidence of wrongdoing would have resulted in discharge anyway, even though those courts accepted that an unlawful motive was the sole basis for termination. *McKennon*, 513 U.S. at 355. The Supreme Court "question[ed] the legal conclusion" reached by the lower courts and found it "incorrect." *Id.* "The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason." *Id.* at 360. As Defendant here noted, though the Court found the employer violated the ADEA, it found that the issue of employee wrongdoing was relevant to calculating damages. *Id.* at 360. Ultimately, *McKennon* held that an employer may consider after-acquired evidence in limiting damages in ADEA cases. *Id.* at 362-63.

Here, the Court is not concerned with calculating damages. Rather, the issue before the Court is what evidence is admissible at trial to determine if Defendant impermissibly terminated Plaintiff because of his age. Evidence acquired

3

after the decision to terminate Plaintiff has no bearing on this issue. With this in mind, the Court turns to the specific pieces of evidence.

### 1. Mark Delisi's Evidence and Testimony

Plaintiff seeks to exclude Defendant's trial exhibits 6 and 26 and related testimony about Mark Delisi ("Delisi"), Plaintiff's subordinate at CSC. (Pl.'s Mot. at 3.) Exhibit 6 is an email from Delisi to Holzer with an attachment detailing issues he had with Plaintiff. (Pl.'s Mot., Ex. A, at 19-21.)[1] Exhibit 26 is an email exchange between Delisi and Plaintiff about holiday leave. (Pl.'s Mot., Ex. A, at 62-63.) Plaintiff argues that Delisi testified at his deposition that he did not complain about Plaintiff to Mason or Lawrie at all, and that he did not complain to Holzer about Plaintiff until after the decision to fire Plaintiff had been made. (Pl.'s Mot. at 3.) Accordingly, Delisi's complaints were not known to Holzer, Lawrie, or Mason on January 28, 2014. (*Id.*)

Defendant argues that Mason spoke at length with Delisi on January 21, 2014, the day Delisi submitted his resignation, and talked at length about his reasons for leaving. (Def.'s Opp. at 3.) Additionally, Delisi testified that during the meeting of communications employees on January 23, he believed he spoke about Plaintiff's behavior. (Def.'s Opp. at

---

[1] Pagination of exhibits is according to CM/ECF.

3.) The Court noted in its ruling on summary judgment that there is a genuine issue of material fact as to whether and to what extent Delisi's comments played a role in the decision to terminate him. (*See* 2/12/15 Mem. Op. at 16.) Any issues about timing go to weight, rather than admissibility, and counsel are free to examine and cross-examine witness to determine what decision-makers knew and when they knew it, as well as highlight those points in closing argument. Therefore, Plaintiff's motion as to Exhibits 6, 26, and Delisi's related testimony will be denied.

### 2. Heather William's Testimony

Plaintiff argues that the testimony of Heather Williams ("Williams"), a colleague of Plaintiff's, should be excluded because the decision-makers were not aware of her complaints when they made the decision to terminate Plaintiff. (Pl.'s Mot. at 4.) Defendant counters that her testimony is directly relevant to Plaintiff's claim that he was excelling at his job and is directly relevant to address Finn's bias and the veracity of his testimony. (Def.'s Opp. at 4.)

Under the Federal Rules of Evidence, evidence is considered relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). To establish a prima facie case of age

5

discrimination, Plaintiff must prove by a preponderance of the evidence that (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) following his discharge, the position remained open or he was replaced by a substantially younger individual with comparable qualifications. *Hartman v. Univ. of Md. at Baltimore*, No. 14-1229, 2014 WL 6981356, at *3 (4th Cir. Dec. 11, 2014) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)).

The Court has reviewed the excerpt of Williams's deposition testimony provided by Plaintiff. (See Pl.'s Mot., Ex. M, at 176-183.) In her deposition, she recounted what she perceived as an unprofessional interaction with Plaintiff and stated that she reported this issue to Finn. (*Id.* at 180.) Additionally, she testified that she voiced general concerns about the leadership team, including Plaintiff, at the January 23 communications meeting. (*Id.* at 183.) Williams's testimony is relevant to whether Plaintiff can prove his prima facie case, as it bears directly on whether Finn, Plaintiff's immediate supervisor, was on notice of complaints about Plaintiff as well as what role, if any, those complaints played in Finn's formulation of whether Plaintiff was meeting legitimate job

6

expectations. Therefore, Plaintiff's motion as to Williams's testimony is denied.

### 3. Marcel Goldstein's Testimony

Plaintiff seeks to exclude Marcel Goldstein's ("Goldstein") testimony. (Pl.'s Mot. at 4.) At Goldstein's deposition, he claimed that Plaintiff used inappropriate language with him on two occasions. (*Id.; see* Pl.'s Mot., Ex. I.) Defendant responds that it has not listed Goldstein as a witness in its case-in-chief and does not intend to mention this testimony in its opening statement. (Def.'s Opp. at 6.) Whether it intends to call Goldstein depends on Plaintiff's testimony at trial. (*Id.*) As the relevancy of Goldstein's testimony depends on what evidence is adduced at trial, the Court defers ruling on this motion until the need arises to address it.

### 4. Other CSC Trial Exhibits

Plaintiff seeks to exclude several of Defendant's trial exhibits because Defendant was unaware of their existence on January 28, 2014. (Pl.'s Mot. at 4.) Specifically, Plaintiff seeks to exclude Defendant's trial exhibits 15, 17-25, 27, 28, 30-34, and 37. (*See generally* Pl.'s Mot, Ex. A.) Exhibits 15, 19-21, 23, 25, and 37 are discussed *infra*; therefore, the Court focuses its attention on the remaining exhibits.

7

Exhibits 17, 18, 22, 24, 28, 30, and 31 are emails between Plaintiff and Finn commenting on their colleagues' quality of work or their perceptions of their colleagues. (Pl.'s Mot., Ex. A, at 40-44, 52-53, 55-59, 68-80.) While the emails are not models of professionalism, there is nothing in the emails to suggest that the comments and sentiments were known to anyone besides Finn and Plaintiff, let alone known to the decision-makers. Therefore, these emails have no relevance to the claim at issue and are inadmissible.

Exhibits 32 through 34 are emails sent by members of the communications staff after Defendant announced that Finn and Plaintiff had been terminated. (Pl.'s Mot, Ex. A, at 81-85.) The emails are vague and do not specifically reference Plaintiff. Therefore, Exhibits 32, 33, and 34 are inadmissible as irrelevant.

### B. Character Evidence About Plaintiff

Plaintiff alleges that Defendant has proposed several trial exhibits for the apparent purpose of "smearing" Plaintiff's character. (Pl.'s Mot. at 6.) The admissibility of each category of evidence is addressed in turn.

#### 1. "Too Young" Emails

Exhibits 20, 21, 23, and 25 are a series of emails in which Plaintiff criticizes employees supplied by an outside consulting firm as "too young." (Pl.'s Mot. at 6; Pl.'s Mot.,

8

Ex. A, at 50-54, 60.) Defendant argues that if Plaintiff or Finn testify that "old fart" must refer to Plaintiff's age, then Defendant must be permitted to introduce evidence that discredits such an interpretation. (Def.'s Opp. at 9.) This evidence does that, Defendant contends, because in deposition testimony Plaintiff stated that "young" is just a synonym for "inexperienced," and Plaintiff's use of the term "young" in describing others is "clearly relevant" to the claim at issue here. (*Id.*) The Court fails to see how Plaintiff's use of the term "young" is relevant to deciphering the meaning of "old fart" or how it has any bearing on Plaintiff's termination. Therefore, Exhibits 20, 21, 23, and 25 are inadmissible because they are irrelevant. Because the Court finds that these exhibits are irrelevant, it declines to consider whether they are also excludable under Federal Rule of Evidence 404.

**2. Emails From Finn**

Plaintiff argues Exhibits 18, 19, and 22 are inadmissible on character grounds because Plaintiff did little more than express agreement with Finn's comments. (Pl.'s Mot. at 7.) Exhibit 18 is an email exchange between Finn and Plaintiff with blunt comments regarding another CSC employee. (Pl.'s Mot., Ex. A, at 43.) Exhibit 19 is another email between Finn and Plaintiff expressing agreement on a hiring plan. (*Id.* at 45.) Exhibit 22 is a third email between Plaintiff and Finn

9

in which Plaintiff echoes Finn's frustration with another CSC colleague.  (*Id.* at 52.)  Again, the Court fails to see the relevance of Exhibits 18 and 22 and therefore those exhibits are inadmissible.  In light of this holding, the Court declines to consider whether the evidence is also excludable under Rule 404.

As to Exhibit 19, the email exchange includes a forwarded message from Finn to Plaintiff including correspondence Finn had with Lawrie.  In the email, Lawrie states that he wants to investigate why so many people have left the communications group.  The Court does not find it to be excludable as impermissible character evidence.  *See* Fed. R. Evid. 404 (stating that evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character).  Rather, this email is relevant to whether there was an ongoing investigation of the corporate communications group and whether Finn and Plaintiff were aware of such an investigation.  Therefore, it is admissible.

### 3. Emails from Plaintiff to Colleagues

Plaintiff challenges Exhibits 15 and 26, emails that Plaintiff wrote to colleagues, because the emails paint Plaintiff in a negative light.  (Pl.'s Mot. at 7.)  As noted *supra*, Exhibit 26 is admissible.  The Court does not find need to reconsider this ruling as Exhibit 26 is not impermissible

10

character evidence under Rule 404.

Exhibit 15 is an email Plaintiff sent to several members of the communications group in which he tells a member of the staff "I am not sure anyone will understand what that means. Simple English may be more helpful." (Pl.'s Mot., Ex. A, at 33.) Defendant seeks to offer this as evidence that Plaintiff violated CSC's "CLEAR" values and to validate others' general complaints of Plaintiff's behavior. (Def.'s Opp. at 11.) This evidence is marginally relevant, but the Court deems it admissible and will deny the motion as to this exhibit.

### C. Evidence Relating Only to Jim Finn

Plaintiff seeks to exclude Defendant's trial exhibits 9,[2] 10, 12, 14, 16, 24, 35, and 37 as they relate only to Finn. (Pl.'s Mot. at 8.) Exhibits 9, 14, 16, 24, and 37 are emails sent by Finn. (*See* Pl.'s Mot., Ex. A.) Exhibit 10 is an email from Ann Eisele ("Eisele") to Mason relating to a "sticky" issue. (*Id.* at 24.) Exhibit 12 is an email from Delisi to Mason expressing gratitude for support, apparently related to conversations he had with Mason about moving his corporate social responsibility function out of corporation communications. (*Id.* at 25; *see* Pl.'s Mot. at 9.) Likewise, Exhibit 35 is an email exchange between Delisi and Mason. (*Id.*

---

[2] Finn authored an email, which a colleague then forwarded to Mason complaining about said email.

at 86-88.)  Exhibit 37 is an email from Finn to Goldstein, Plaintiff, and a third CSC employee.  (*Id.* at 89.)

All of these exhibits, save for Exhibit 12, are not relevant to determining whether Plaintiff was fired because of his age or because of *his* poor performance.  Therefore, these exhibits are inadmissible in the Defendant's case to demonstrate why Plaintiff was fired.  However, the emails may be admissible to impeach Finn, depending on his trial testimony.  The Court will rule on whether the exhibits are admissible as impeachment evidence if and when the need arises at trial.

Defendant claims that Exhibit 12 is "closely related" to the issue of Plaintiff's performance because in the email Mason encourages Delisi to "have a straight talk conversation" with his boss, Plaintiff, about moving the corporate social responsibility function out from the auspices of corporate communications.  (Def.'s Opp. at 13.)  Though this email references a future conversation with Plaintiff and it is unclear whether such a conversation ever occurred, the Court finds that it is marginally relevant.  Therefore, the Court will deny the motion with respect to Exhibit 12.

**D. Marion McGill's Testimony**

Plaintiff seeks to exclude Marion McGill's testimony.  McGill was Mason's executive assistant for eighteen years.  (Pl.'s Mot. at 9.)  McGill is stationed in London and has never

visited CSC's headquarters in Falls Church. Defendant proffers that McGill will testify about what the term "old fart" means in the United Kingdom and how Mason, a native of the United Kingdom, would have intended the term to mean if she used it. (Def.'s Opp. at 13-14.) Plaintiff moves to exclude this testimony on grounds that McGill has no first-hand knowledge or observation of Mason using the term and therefore her testimony does not satisfy the admissibility requirements for lay opinions.[3] (Pl.'s Mot. at 12-13.)

Under Federal Rule of Evidence 701, opinion testimony by lay witnesses is admissible if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." "Rejecting the impractical notion that lay persons be required to testify only to pure facts when relating their knowledge of an incident, the rule allows testimony based on the person's reasoning and opinions about witnessed events, such as are familiar in every day life." *United States v. Offil*, 666 F. 3d 168, 177 (4th Cir. 2011).

---

[3] Defendant does not proffer McGill as an expert witness and therefore the Court will not consider whether she qualifies as such under Federal Rule of Evidence 702. (*See* Def.'s Opp. at 13 n.7.)

Here, Defendant argues McGill's testimony is admissible, even though McGill was not present in the CSC headquarters in Falls Church during the time Plaintiff worked there. Its theory of admissibility is that because of her personal experience with Mason, with whom she is close personally, and her personal observation from living the majority of her life in the United Kingdom, McGill can testify that old fart "doesn't actually mean old. An old fart could be somebody who's like old fashioned in their way, almost sort of like condescending because they think they know better than you because they're an old fart, you know." (Def.'s Opp. at 14-15 (citing Def.'s Opp., Ex. J at 18).) The Court finds McGill's proffered testimony is inadmissible because she was not present when Mason allegedly used the term "old farts" in Falls Church and therefore would only be speculating as to the context in which the term was used. *See Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F. 3d 200, 204 (4th Cir. 2000) (holding lay opinion inadmissible where witness did not have any first-hand knowledge of accident in question and where his sole basis of knowledge was analysis of data collected); *Offill*, 666 F.3d at 177-78 ("Courts are, however, mindful to guard against lay witness testimony when it involves meaningless assertions which amount to little more than choosing up sides.") (citation and internal quotation marks omitted).

### III. Conclusion

For the foregoing reasons, Plaintiff's motion in limine is granted in part and denied in part.  The Court will defer ruling on certain testimony until trial.  An appropriate order will issue.

|  | /s/ |
|---|---|
| February 25, 2015 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |